BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
LISA LINDHORST (Cal. Bar No. 305399)
Assistant United States Attorney
Orange County Office
     8000 United States Courthouse
     411 West 4th Street
     Santa Ana, California 92701
     Telephone: (714) 338-3537
     Facsimile: (714) 338-3708
     E-mail:  lisa.lindhorst@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GEORGE BRAND,<br><br>Defendant. | No. 8:23-CR-00069-FMO<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT (DKT. 18); MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Hearing Date: September 18, 2025<br>Hearing Time: 2:00 P.M.<br>Location:     Courtroom of the<br>              Hon. Olguin |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Lisa Lindhorst, hereby files its Opposition to defendant Brand's Motion to Dismiss for pre-indictment and post-indictment Delay (Dkt. 18)(hereinafter "Mot.").

//

//

//

This Opposition is based upon the memorandum of points and authorities, Exhibits A-E, the Declaration of Lisa Lindhorst, the files and records in this case, and such further evidence and argument as the Court may permit.[1]

Dated: August 28, 2025            Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

LISA LINDHORST
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] This opposition was due on August 28, 2025. Because PACER was down yesterday, this brief was timely filed via email and is now being uploaded to PACER on August 29, 2025.

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

Defendant Davyd George Brand Jimenez spent years posing as a federal immigration officer to defraud at least 25 vulnerable immigrants out of hundreds of thousands of dollars. (Indictment, Dkt. 1, ¶¶ 1-4.) He flashed fake badges and firearms, created counterfeit Department of Homeland Security ("DHS") paperwork, and promised immigration benefits he had no power to deliver. (Id. ¶ 4.)

He now seeks dismissal of the charges, citing both pre-indictment and post-indictment delays. Neither argument justifies the extraordinary remedy of dismissal. This complex multi-year fraud case was timely indicted while his scheme was still ongoing, <u>years</u> before the statute of limitations would run. Further, his claimed prejudice from this alleged delay – faded memories, unidentified witnesses, and generalized health concerns – are precisely the sort of speculative harms that the Ninth Circuit has repeatedly rejected.

His post-indictment arguments fare no better. The 22 months between indictment and arraignment are far shorter than the multi-year delays ever found to justify dismissal, and defendant himself caused much of that delay. He knew about this case within months, used it to continue sentencing in San Diego while exploring a joint resolution, and the rest was due to ordinary Bureau of Prisons ("BOP") transit processing. His motion should be denied.

**II.  BACKGROUND**

**A.   The Fraud Scheme**

Defendant Brand's immigration fraud scheme lasted for at least four years, from 2019 through 2023. (Id. ¶ 4.) As part of his scheme, defendant targeted members of the Hispanic community seeking legal

status in the United States, charging each victim between $10,000 and $20,000. He met victims in public places in Orange County, such as parks, and reinforced his false persona by showing counterfeit DHS documents and fabricated immigration paperwork bearing fraudulent government seals. (Id. ¶¶ 4(f)-(s).) Defendant also instructed victims to send him identification documents and payments through mail and wire transfers, including deposits into his "Immigration Consultants, LLC" bank account. (Id. ¶¶ 4(v)-(w), 5-7.)

He deceived more than two dozen victims of modest means into paying him more than $200,000 while providing no legitimate immigration services. (Id. ¶ 4(bb).) When delays mounted, he offered excuses ranging from government bureaucracy to the COVID-19 pandemic. (Id. ¶ 4(z).) Because his conduct and conversations with victims continued into at least April 2023, the five-year statute of limitations would not expire until April 2028. 18 U.S.C. § 3282(a).

**B.    Procedural History**

On May 24, 2023, a federal grand jury indicted Brand on false impersonation, mail and wire fraud, misuse of DHS seals, wrongful transfer of documents, misuse of a U.S. passport, and aggravated identity theft. He was arraigned two years later, on May 27, 2025. The two-year gap stemmed from his detention in an unrelated San Diego drug case (21-cr-01745-BAS). He absconded before his September 2022 sentencing, was arrested a year later in Tijuana (after this indictment), and returned to San Diego for sentencing. (Gov. Ex. E at 2 n.1.) He then sought three sentencing continuances, largely to explore resolving both cases together. (Gov. Exs. A1-A3.)

The following is a timeline of all relevant events:

2

| Date | Event |
|------|-------|
| 2019 – May 2023 | Defendant's alleged fraud scheme continued |
| May 24, 2023 | Indictment returned in this case. |
| Aug. 2023 | Defendant arrested in Tijuana after absconding and failing to appear for his San Diego sentencing hearing, and returned to San Diego custody. |
| Sept. 12, 2023 | Defendant sought to continue sentencing in his San Diego case, citing the filing of the instant indictment. (Gov. Ex. A1.) |
| Nov. 21, 2023 | Defendant again sought to continue sentencing, noting this indictment as a basis for delay. (Gov. Ex. A2.) Defense counsel acknowledged via email needing "more time" to connect with the Central District AUSA. Emails between the Central District and Southern District AUSAs confirm Brand's strategy of trying to resolve both cases together. (Gov. Exs. C, D.) |
| Feb. 23, 2024 | Defendant sought a third continuance, again because of this indictment. (Gov. Ex. A3.) |
| Apr. 29, 2024 | Defendant sentenced in the San Diego case. |
| Apr. – Dec. 2024 | Defendant held in San Diego while awaiting bed space and transport. (Gov. Ex. B.) |
| Dec. 13, 2024 | Defendant moved into BOP's transport system. (Id.) |
| Jan. 13, 2025 | Defendant arrived at Terminal Island to serve his San Diego sentence. (Id.) |
| Apr. 11, 2025 | Writ filed to bring defendant into custody in this case. |
| May 27, 2025 | Defendant arraigned in this case. |
| Aug. 5, 2025 | Defendant filed motion to dismiss case based on pre-indictment and post-indictment delay. |

## III. DISCUSSION

### A.   PRE-INDICTMENT DELAY

Defendant argues the government waited too long to charge him and that this delay impaired his defense. (Mot. at 2-6.) He shows

3

neither actual, non-speculative prejudice nor intentional delay for tactical advantage.

1.   Legal Standard

Pre-indictment delay violates due process only in rare circumstances. A defendant must clear two hurdles: first, he must show actual, non-speculative prejudice from the delay; second, he must show that the delay, weighed against the government's reasons, offends fundamental notions of justice. United States v. Dudden, 65 F.3d 1461, 1466 (9th Cir. 1995). This prejudice requirement is a "heavy burden that is rarely met." United States v. Corona-Verbera, 509 F.3d 1105, 1112 (9th Cir. 2007) (citation omitted). Generalized claims of faded memories, missing witnesses, or lost evidence do not suffice; the statute of limitations already guards against those ordinary effects of time. United States v. Marion, 404 U.S. 307, 322 (1971). Instead, defendants must present definite, non-speculative proof that delay meaningfully impaired their defense. Corona-Verbera, 509 F.3d at 1112. Courts apply this standard stringently. United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995).

If a defendant cannot establish actual prejudice, "it is unnecessary to reach the balancing portion" of the test. United States v. Talbot, 51 F.3d 183, 186 (9th Cir. 1995). But even when actual prejudice is alleged, prosecuting after investigative delay does not violate due process so long as the government acted in good faith. United States v. Lovasco, 431 U.S. 783, 796 (1977). Prosecutors have "a good deal of leeway" in deciding when to indict, so long as the statute of limitations is satisfied. United States v. Mays, 549 F.2d 670, 678 (9th Cir. 1977).

4

        2.    Argument

    Defendant's claim fails under both prongs. He shows neither actual prejudice nor bad faith.

            a.    *Defendant fails to prove actual prejudice.*

    Defendant asserts that witnesses may have been lost, surveillance footage may have been destroyed, and his own memory has faded. (Mot. at 5-6.) But he identifies no unavailable witness, no evidence surveillance existed, and no proof of material memory loss. These are the generalized claims courts reject. See Manning, 56 F.3d at 1194. His claim of lost leverage for a global plea is speculative and not cognizable. Corona-Verbera, 509 F.3d at 1112. In fact, he exercised that leverage and then chose to proceed separately. (Gov. Ex. B; Lindhorst Decl. ¶ 4.) Because he cannot demonstrate actual prejudice, his claim fails at the threshold.

            b.    *The Delay Does Not Offend Conceptions of Justice*

    Even if the Court were to reach the second prong, the timing of the indictment raises no due process concerns. This was a complex, multi-victim fraud spanning years and districts. Defendant was indicted while still offending in 2023, years within the statute of limitations and consistent with investigative needs. Pallan v. California, 571 F.2d 497, 501 (9th Cir. 1978) (noting multitude of reasons for delayed indictment, including weeding out less serious cases). He targeted undocumented and vulnerable victims unlikely to report, which further slowed discovery of the scheme's scope.

    None of defendant's alleged harms trace to bad faith. Footage would have been erased in weeks regardless of indictment, and memory loss or relocation are ordinary consequences of time already accounted for by the statute of limitations. Later, defendant himself

compounded delay by seeking continuances. The government acted reasonably, indicting years before the statute of limitations would expire. Defendant cannot transform ordinary investigative delay into a due process violation. Lovasco, 431 U.S. at 794-96.

**B.    POST INDICTMENT DELAY**

Defendant argues the indictment should be dismissed because two years passed between May 2023 indictment and May 2025 arraignment. The claim fails: defendant caused much of the delay, and the rest was routine BOP transit delays, not bad faith.

1.    Legal Standard

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court requires a case-specific balancing of four factors: (1) length of delay, (2) reason for delay, (3) assertion of the right, and (4) prejudice. Barker v. Wingo, 407 U.S. 514, 530-32 (1972).

A post-indictment delay must first cross a "threshold" of being "presumptively prejudicial" before the Barker factors are weighed. Doggett v. United States, 505 U.S. 647, 651-52 (1992); United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993). Crossing that threshold triggers further analysis, not dismissal. Id. In a Barker analysis, no single factor is dispositive. Barker, 407 U.S. at 533. Deliberate delay weighs heavily, negligence less so, and valid reasons like concurrent prosecutions justify delay. Id. at 531; Alexander, 817 F.3d 1178, 1182 (9th Cir. 2016). Prejudice is assessed through three interests: (1) oppressive pretrial incarceration, (2) anxiety and concern, and (3) impairment of the defense, the last being the most important. Barker, 407 U.S. at 531. Claims of lost

concurrency are speculative and handled at sentencing, not under the Speedy Trial Clause. Gregory, 322 F.3d at 1164-65.

2.    Argument

Here, all four factors cut against dismissal.

a.    *The Length of the Delay Disfavors Dismissal*

The two-year period triggers a Barker inquiry, but not a dismissal. This delay falls far short of "extraordinary" under Sixth Amendment standards. The Ninth Circuit has upheld similar or longer delays. See United States v. Gregory, 322 F.3d 1157, 1162-63 (9th Cir. 2003)(22 months); Beamon, 992 F.2d at 1015 (17- and 20-month delays). Dismissal is reserved for extreme delays of six to eight years. See Doggett, 505 U.S. at 655; United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008).

b.    *The Reason for the Delay Does Not Favor Dismissal*

The delay here stems mainly from defendant's conduct and his concurrent San Diego prosecution. Where concurrent cases cause the delay, the court "must consider the nature and circumstances of the delay." United States v. Myers, 930 F.3d 1113, 1119 (9th Cir. 2019).

Defendant argues that "the delay in this case is due solely to the government's negligence" and "through no fault of his own." (Mot. at 7-8.) Not so. The concurrent case posture that caused this delay in the first place was due entirely to defendant's decision to abscond his San Diego sentencing. After being arrested in Tijuana a year later, he caused another year of delays when he requested three sentencing continuances to pursue a joint resolution in this case. Those continuances, which he initiated in September 2023, November 2023, and February 2024, expressly invoked the "new indictment in the Central District of California" as a basis for the delay. (Gov. Exs.

7

A1-A3.) Far from negligence, the government accommodated defendant's strategy.

Defendant further claims that "the time spent in custody compounds the prejudice Mr. Brand suffered because the government knew exactly where Mr. Brand was and did nothing to bring him to court to permit an opportunity for him to serve that year as a concurrent sentence on the instant matter." (Mot. at 9.) That is misleading. Defendant himself asked to continue sentencing to explore a Rule 20 transfer and global deal. (Gov. Exs. C, D.) The record shows he was aware of the charges and bears responsibility for delay. See Barker, 407 U.S. at 531 ("[A] defendant who seeks delay cannot then complain of it."). Having chosen to delay in pursuit of those benefits, he cannot now argue the government "did nothing."

Defendant also insists that "after he was sentenced in April of 2024 . . . [the government] nevertheless failed to transfer him for over two more years before he initially appeared in this case." (Mot. at 9.) That overstates the timeline. It was one year, not two. For the first eight months, he remained in San Diego awaiting BOP transport to his destination facility, Terminal Island. (Gov. Ex. B.) Our office called every other month to determine when he would arrive at Terminal Island; he arrived in January 2025 and our office was notified in March of 2025. (Lindhorst Decl. ¶ 3; Gov. Ex. B.[1]) The government promptly filed a writ in April 2025. (Lindhorst Decl. ¶ 3.) He appeared in this district in May 2025. That short period

[1] Such multi-month transfers are standard due to BOP overcrowding and certainly are not indicative of negligence or bad faith. Because BOP does not transfer inmates individually, defendants are moved on buses with groups of inmates, stopping at multiple transfer facilities along the way—as occurred in Brand's case. (Lindhorst Decl. ¶ 2; Gov. Ex. B.)

reflects diligence, not neglect. As in Myers, when concurrent proceedings are underway, delay must be viewed in context. 930 F.3d at 1121. Even if this BOP delay were deemed negligence, it weighs only lightly and cannot justify dismissal absent substantial prejudice. Barker, 407 U.S. at 531. Moreover, the only reason these cases overlapped was defendant's absconding before his 2022 San Diego sentencing, which delayed resolution another year. (Gov. Ex. E.)

### c.    Defendant's Assertion of Speedy-Trial Rights Carries Little Weight

This factor cuts against defendant. He formally asserted his speedy-trial rights only at his May 2025 arraignment. For almost a full year, while knowing about this case, he filed continuances in San Diego that referenced the indictment but never once sought to be brought to this district. A defendant who invokes charges to delay another case cannot later claim prejudice from that delay. See Gregory, 322 F.3d at 1162. His belated assertion deserves little weight. See Gregory, 322 F.3d at 1162.

### d.    Defendant Has Not Established Prejudice

The most important Barker factor is prejudice. Barker recognizes three interests: oppressive pretrial incarceration, anxiety and concern, and impairment of the defense. 407 U.S. at 531.

Defendant Brand cannot demonstrate any of these. He was in custody during much of the relevant period serving a sentence in his San Diego case. Thus, he was not subject to the kind of "oppressive pretrial incarceration" the speedy trial right protects. Nor can he credibly claim extraordinary anxiety from charges he already knew about and invoked to continue another case. (Gov. Exs. A1-A3.) Finally, his claims of lost witnesses and faded memories are

speculative, unsupported by any concrete showing of actual prejudice. See Corona-Verbera, 509 F.3d at 1112–13; Sherlock, 962 F.2d at 1354.

He claims the delay deprived him of concurrent time and increased his criminal history score. (Mot. at 12.) That is speculative and flawed. First, the Ninth Circuit has rejected this argument. Gregory, 322 F.3d at 1164–65. Second, defendant affirmatively rejected an opportunity to resolve his Southern and Central District cases together. Emails from fall 2023 reflect discussions with defense counsel and an offer from this Office to pursue a global resolution. Rather than accept, defendant chose to proceed to sentencing in San Diego alone. (Gov. Exs. C, D.) He cannot now claim prejudice from the very path he elected.

Third, any delays caused by this overlap is his own doing. Had he appeared for his sentencing in 2022, his San Diego judgment would have preceded this indictment, eliminating concurrency. His flight created the overlap. What's more, when he absconded he lost plea benefits (acceptance of responsibility, early-resolution credits) and exposed himself to a higher score. (Ex. E at 2 n.1.)

In short, the concurrency argument fails: the law does not recognize it, he rejected a global resolution, and he created the overlap by absconding.

e.    *The Barker Factors Do Not Support Dismissal*

Balancing all four factors, dismissal is unwarranted. The delay was modest, explained largely by his concurrent case, and caused no actual prejudice. Dismissal is an extraordinarily unjustified remedy.

**IV.    CONCLUSION**

For these reasons, the government respectfully asks that defendant's Motion be denied in its entirety. (Dkt. 18.)

10