TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KEVIN Y. FU (Cal. Bar No. 319465)
Assistant United States Attorney
Orange County Office
      United States Attorney's Office
      411 West Fourth Street, Suite 8000
      Santa Ana, California 92701
      Telephone: (714) 338-3576
      E-mail:   Kevin.Fu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:23-cr-00069-FMO |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT DAVYD GEORGE BRAND JIMENEZ |
| v. | |
| DAVYD GEORGE BRAND JIMENEZ, | |
| Defendant. | |

1.    This constitutes the plea agreement between Davyd George Brand Jimenez ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

      a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts 1-15 and 23 of the indictment in United States v. Davyd George Brand Jimenez, CR

No. 8:23-cr-69-FMO, which charge defendant with violations of 18 U.S.C. § 912: False Impersonation of Federal Officer and Employee; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 506(a)(3): Possession of Fraudulent Seals of Departments and Agencies of the United States; and 18 U.S.C. § 1028A: Aggravated Identity Theft.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to

3

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   With respect to counts 1-15, recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 20 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.  The parties also agree that the government may respond to a request by defendant for a sentence below the government's recommendation.

f.   With respect to counts 1-15, recommend that any term of imprisonment be served concurrently with the sentence imposed in United States v. Davyd Brand Jimenez, case number 3:21-cr-01745-BAS.

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in counts 1-10, that is, False Impersonation of Federal Officer and Employee, in violation of Title 18, United States Code, Section 912, the following must be true: <u>first</u>, defendant falsely pretended to be an officer acting under the authority of the United States and a department and agency thereof, and <u>second</u>, defendant either acted as such, or in such pretended character demanded or obtained something of value, namely money in this case.

5.   Defendant understands that for defendant to be guilty of the crime charged in counts 11-12, that is, Mail Fraud, in violation

4

of Title 18, United States Code, Section 1341, the following must be true: first, defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or by omitted facts; second, the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property; third, defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and fourth, defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

6.    Defendant understands that he is guilty of aiding and abetting mail fraud if he willfully caused an act to be done that if directly performed by him would constitute mail fraud.  A defendant who puts in motion or causes the commission of an indispensable element of the offense of mail fraud may be found guilty as if he had committed this element of mail fraud himself.

7.    Defendant understands that for defendant to be guilty of the crime charged in counts 13-14, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: first, defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts; second, the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property; third, defendant acted with the intent to defraud, that is, the intent to deceive and

5

cheat; and <u>fourth</u>, defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

8.    Defendant understands that for him to be guilty of mail or wire fraud based on omissions of material facts, he must have had a duty to disclose the omitted facts arising out of a relationship of trust.  That duty can arise either out of a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance that it would ordinarily exercise.

9.    Defendant understands that for defendant to be guilty of the crime charged in count 15, that is, Possession of Fraudulent Seals of Departments and Agencies of the United States, in violation of Title 18, United States Code, Section 506(a)(3), the following must be true: <u>first</u>, defendant possessed a falsely made or counterfeit seal, or a copy of a public seal; <u>second</u>, defendant knew the seal was falsely made or counterfeit, or was a copy of a public seal; <u>third</u>, the seal was of a department or agency of the United States, specifically, the Department of Homeland Security in this case; and <u>fourth</u>, defendant possessed the seal with the intent to defraud, that is, the intent to deceive and cheat.  Defendant understands that the term "falsely made" means a seal that contains or conveys false or incorrect information, even if the seal itself is authentic, and that the term "counterfeit" means a seal that has been falsely made or manufactured so as to appear to be a genuine seal.

10.    Defendant understands that for defendant to be guilty of the crime charged in count 23, that is, Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A, the

6

following must be true: first, defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person or a false identification document; second, defendant knew that the means of identification belonged to a real person; and third, defendant did so during an in relation to mail fraud.

PENALTIES AND RESTITUTION

11.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. § 912 (False Impersonation of Federal Officer and Employee) is: 3 years imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. § 1341 (Mail Fraud) or 18 U.S.C. § 1343 (Wire Fraud), is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 506(a)(3) (Possession of Fraudulent Seals of Departments and Agencies of the United States) is: 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7

14.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1028A (Aggravated Identity Theft) is: 2 years' imprisonment to be imposed consecutively to any other period of imprisonment to which defendant is sentenced; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

15.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 117 years imprisonment; a 3-year period of supervised release; a fine of $4,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $1,600.

16.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A, as charged in Count 23 of the indictment, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment.

17.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

8

suffered by that victim as a result of: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $152,476 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

18.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

19.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a

professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

20.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

21.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 24 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than in or around April 2019, and continuing to at least April 2023, in Orange County, within the Central District of California, and elsewhere, defendant knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud people who wanted to obtain authorization to legally remain in the United States and who wanted to establish United States citizenship.  Defendant defrauded these people as to material matters and obtained money and property from these individuals by means of materially false and fraudulent pretenses, representations, and promises, and through the concealment of material facts.

Defendant would target members of the Hispanic community in his fraudulent scheme.  Defendant would falsely claim to be a federal agent with the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE").  Defendant would tell his victims that he could help them obtain work permits, legal United States residency, and U.S. citizenship, and throughout the offense, defendant charged as much as $20,000 per customer victim.

For example, defendant demanded and obtained the following from victims:

| Date | Victim(s) | Thing of Value |
|---|---|---|
| 04/29/2019 | M.M.D. | $5,000 (Demanded $13,000) |
| 10/30/2020 | A.d.l.S. and A.P.d.l.S. | $9,835 |

11

| 11/05/2020 | N.M.J. and J.T.A. | $12,000 |
| 11/05/2020 | K.Y.G. | $10,000 |
| 11/11/2020 | N.V.I. | $15,000 |

Defendant would meet with customer victims in the Central District of California, including at a park in Santa Ana, California. Defendant would display a fake ICE badge to potential and existing customer victims to trick those customer victims into believing that he was a federal ICE agent.  Defendant would sometimes display a firearm to potential and existing customer victims.

Defendant would sometimes falsely claim to have previously worked for the DEA and to have assisted in arresting terrorists. Defendant would sometimes falsely claim to be an attorney.  Defendant would sometimes falsely claim to be doing work with or at United States consulates.

For example, defendant took the following actions while impersonating a federal agent:

| Date | Victim(s) | Defendant's Actions |
|------|-----------|---------------------|
| 04/29/2019 to 12/09/2019 | M.M.D. | (a) Stating that he was an ICE officer; (b) Text messaging a photograph of a fake ICE badge; and (c) Purporting to report to M.M.D. on the status of an application for a stay of deportation. |
| 10/30/2020 | A.d.l.S. and A.P.d.l.S. | (a) Stating that he was an ICE agent; (b) Displaying a fake ICE badge; and (c) Claiming that he |

12

| | | could help A.d.l.S. establish United States residency. |
|---|---|---|
| 11/05/2020 | N.M.J. and J.T.A. | (a) Stating that he was a "Homeland Security" official; (b) Stating that he worked at the United States Immigration office in Laguna Niguel, California; (c) Displaying a fake ICE badge; and (d) Claiming that he could help N.M.J. and J.T.A. obtain work permits and U.S. citizenship. |
| 11/05/2020 to 05/21/2022 | K.Y.G. | (a) Stating that he was an ICE agent; (b) Displaying a fake ICE badge; and (c) Purporting to report to K.Y.G. on the status of applications for immigration benefits. |
| 11/11/2020 | N.V.I. | (a) Displaying a fake ICE badge; and (c) Claiming that he could help N.V.I. establish U.S. residency and obtain a "green card." |

By claiming that he would be assisting the customer victims with their immigration paperwork as well as making all the previously mentioned false statements about working for ICE, being an attorney, or otherwise working as a federal law enforcement agent, defendant would create a relationship of trust with his customer victims, which induced the customer victims to relax the care and vigilance ordinarily exercised with immigration matters.

13

Defendant would not tell potential and existing customer victims material facts, such as the fact that he was not actually an ICE agent and that his ICE badge was fake.  Indeed, from approximately December 1, 2020, to approximately May 18, 2021, in the Central District of California, defendant possessed with fraudulent intent a counterfeit, forged, and fraudulently made seal of the United States Department of Homeland Security, knowing that the seal was counterfeited, forged, and fraudulently made.

Defendant would also neglect to tell potential and existing customers that in 2013, he had pleaded guilty to a federal criminal felony involving illegally possessing identification documents, for which he was sentenced to serve time in federal prison; or that he had participated in a conspiracy to distribute more than 15 kilograms of illegal narcotics in San Diego, California, for which he had been arrested in May 2021.

Defendant would instruct some customer victims to send or deposit payments into his Bank of America ("BofA") account ending in 6925, which defendant had opened in the name of Immigration Consultants, LLC.  Some of his customer victims complied with these payment instructions, causing the following interstate wire communications:

| Date | Interstate Wire Transmission |
| --- | --- |
| 12/09/2020 | Deposit information to BofA server in Richardson, Texas, after customer victims N.M.J. and J.T.A. deposited a $12,870 check into defendant's BofA business account ending in 6925 at a BofA branch in Riverside, California. |
| 12/15/2020 | Deposit information to BofA server in Richardson, Texas, |

14

| | |
|---|---|
| | after customer victims M.E. and A.E. deposited a $8,670 check into defendant's BofA business account ending in 6925 at a BofA branch in Rancho Cucamonga, California |

Defendant would also use the postal or mail service to advance his scheme.  For example, defendant would mail materials in furtherance of his scheme and would also tell his customer victims to mail their identification documents to him at a mailbox location in San Ysidro, California.  The following are specific instances of mailings delivered by the United States Postal Service or a private or commercial interstate carrier that defendant caused as part of his scheme:

| Date | Mailing |
|---|---|
| 11/21/2020 | Package of identification documents sent from customer victim N.V.I. via FedEx in Huntington Beach, California, to defendant in San Ysidro, California. |
| 04/27/2021 | United States Postal Service Priority Mail Express envelope no. EJ457760101US mailed from defendant in San Ysidro, California, to customer victim M.M.D. in Orange, California. |

After receiving payments from his victims, defendant would not file immigration applications on their behalf.  When victims followed up to ask about the status of their applications, defendant would provide them with various excuses to explain the delay in obtaining immigration benefits.

Defendant would also fabricate immigration documents to give his victims.  Defendant would fraudulently affix a watermark bearing the

15

DHS seal before providing these fabricated immigration documents to customer victims as purported proof that the customer victims' immigration applications were progressing.

An example of an immigration document that defendant fabricated was a stay of deportation for customer victim M.M.D., which defendant fabricated by fraudulently checking off "GRANTED" on the application and entering a name for the purported ICE official who approved the stay.  Defendant also used the name and Mexican passport number of victim M.M.D. in fabricating this stay of deportation without legal authority to do so, and defendant knew M.M.D. was a real person.  On February 24, 2020, defendant sent a photograph of this fabricated stay of deportation to victim M.M.D.  The unauthorized use of M.M.D.'s name and Mexican passport number was done in relation to the mail fraud detailed herein and in count 12 of the indictment.

In August 2021, in exchange for payment, defendant provided a Social Security Card, a United States passport card, and a California Identification Card in the name of M.R.G. to a customer victim so that the customer victim could unlawfully pose in that identity and use those identification documents as proof of authorization to work and legally reside in the United States.

Defendant would continue to contact customer victims through May 2023, including conducting zoom calls with current and potential customer victims in September 2022.

During his fraudulent scheme, defendant tricked and defrauded at least 25 victims into paying him at least $152,476.

SENTENCING FACTORS

22.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing

16

Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

23.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss over $150,000: | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |
| 10+ Victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Misrepresenting as government agent | +2 | U.S.S.G. § 2B1.1(b)(9)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above. Defendant understands that the Court must sentence defendant to a term of two years imprisonment on count 23, which must run consecutive to any other term of imprisonment imposed.

17

24.    Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

25.    Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

26.    Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

18

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF RETURN OF DIGITAL DATA

27.    Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

WAIVER OF APPEAL OF CONVICTION

28.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

29.    Defendant agrees that, provided the Court, before imposition of the mandatory consecutive sentence of two years imprisonment on count 23, imposes a term of imprisonment within or below the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and

19

calculations used to determine and impose any portion of the sentence, with the exception of the Court's calculation of defendant's criminal history category; (b) the term of imprisonment imposed by the Court, except to the extent it depends on the Court's calculation of defendant's criminal history category; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $152,476; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

30.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b), before imposition of the mandatory consecutive sentence of two years imprisonment on count 23, the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $152,476.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

31.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable.  Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement.  Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

32.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result

21

of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

33.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

34.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

35.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

22

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

36.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

37.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

23

recommendations or the parties' agreements to facts or sentencing factors.

38.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 24 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

39.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

NO ADDITIONAL AGREEMENTS

40.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

41.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States
Attorney


/s/ Kevin Y. Fu
_____        04/09/2026
KEVIN Y. FU                             _____
Assistant United States Attorney        Date

_____        04/09/2026
DAVYD GEORGE BRAND JIMENEZ              _____
Defendant                               Date

_____        04/09/2026
HANNAH A. BOGEN                         _____
Attorney for Defendant Davyd George     Date
Brand

25

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

04/09/2026

_____        _____
DAVYD GEORGE BRAND JIMENEZ                Date
Defendant


CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Davyd George Brand Jimenez's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors

26

set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

04/09/2026

HANNAH BOGEN                                            Date
Attorney for Defendant Davyd George
Brand Jimenez

27