AMY KARLIN (Bar No. 150016)
Interim Federal Public Defender
HANNAH A. BOGEN (Bar No. 324294)
(E-Mail: Hannah_bogen@fd.org)
Deputy Federal Public Defender
321 East 2nd St.
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
DAVYD GEORGE BRAND

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:23-cr-00069-FMO |
| Plaintiff, | **DEFENDANT DAVYD GEORGE BRAND'S SENTENCING POSITION; DECLARATION OF HANNAH A. BOGEN** |
| v. | |
| DAVYD GEORGE BRAND, | Sentencing Date: |
| Defendant. | July 16, 2026 at 2:00 PM |

Defendant Davyd George Brand ("Mr. Brand"), by and through his counsel of record, Deputy Federal Public Defender Hannah A. Bogen, hereby submits his position regarding factors relevant to sentencing.

///
///
///
///
///
///
///

For the reasons detailed below, Mr. Brand respectfully requests that the Court impose a sentence of 65 months[1], recommend him for RDAP, and recommend that he serve his sentence at FCI Lompoc I, so he can be close to his son.

Respectfully submitted,

AMY KARLIN
Interim Federal Public Defender

DATED:  July 6, 2026        By  */s/ Hannah A. Bogen*
                                HANNAH A. BOGEN
                                Deputy Federal Public Defender
                                Attorneys for DAVYD GEORGE BRAND

---

[1] As will be explained below, Mr. Brand requests that the first 41 months of his sentence run concurrent to the 120-month sentence he is currently serving in *United States v. Davyd Brand Jimenez*, case no. 3:21-cr-01745-BAS (S.D. Cal.),

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. 18 U.S.C. § 3553(A) ARGUMENT

Courts must impose a "reasonable" sentence after considering the statutory factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). In determining a reasonable sentence for a defendant, a sentencing court must "make an individualized assessment based on the facts presented," which includes "a broad command to consider the nature and circumstances of the offense and the history and characteristics of the defendant." *Gall v. United States*, 552 U.S. 38, 50 & n.6 (2007) (quotation marks omitted); 18 U.S.C. § 3553(a). Factors to be considered include the nature and circumstances of the offense; the history and characteristics of the offender; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence; the need to provide the defendant with needed education, vocational training, medical care or other correctional treatment; the types of sentences available; the applicable sentencing range under the advisory Guidelines; any pertinent policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)-(7). The task for the Court is to impose a reasonable sentence, based on the individual defendant and the facts and circumstances of the particular case at hand, that is "sufficient, but not greater than necessary," to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

Here, Mr. Brand agrees that the custodial sentence requested by the government and Probation is proper.[2] Anything more is not proportional to Mr. Brand's conduct, nor does it achieve the goals of criminal sentencing. 18 U.S.C. § 3553(a).

---

[2] Both the government and Probation recommend that Mr. Brand be sentenced to 65 months imprisonment - 36 months' imprisonment for counts 1-10, and 41 months' imprisonment for counts 11-15, to be served concurrently with each other and concurrently with the sentence that Mr. Brand is currently serving for his conviction in *United States v. Davyd Brand Jimenez*, case no. 3:21-cr-01745-BAS (S.D. Cal.), followed by 24 months' imprisonment for count 23, to be served consecutively to the sentence imposed in this case or that imposed in case number 3:21-cr-01745- BAS, whichever is longer. (ECF no. 39 at 2-3; ECF no. 37 at 1-2.)

1

**A.   The Nature and Circumstances of the Offense and Mr. Brand's Characteristics Warrant a 65-Month Sentence.**

Mr. Brand is an ambitious and motivated father, husband, and son.[3] Sadly, his childhood was filled with addiction and extreme sexual and physical abuse and neglect, which drove him to use cocaine heavily throughout his life. His untreated addiction and emotional trauma are his biggest obstacles and played a significant role in landing him here.

Mr. Brand makes no excuses for his actions, and knows that he harmed many as a result of his choices. He is focused on becoming a better man by programming and working in custody, and seeking substance abuse and mental health treatment. He is eager to begin paying restitution as soon as possible.

Based on Mr. Brand's history and characteristics, a 65-month sentence is sufficient but not greater than necessary, will allow Mr. Brand to pay restitution to the victims in this case, and prevent him from dying behind bars without ever having a chance to right his wrongs.

**1.   Mr. Brand's Earliest Memories are of His Father Raping Him and His Sisters, and His Mother Beating Them.**

Mr. Brand grew up in Michigan with two sisters. His mother and father stayed married and raised them both. They were Jehovah's witnesses. They were also alcoholics and drug addicts who verbally, physically, and sexually abused their children.

As far back as he can remember, Mr. Brand's father anally raped him almost every single day. His father also raped his sisters. Child sexual abuse was common

---

[3] Counsel for Mr. Brand gathered the information in this section from the presentence report (ECF 38) and meetings with Mr. Brand. (Declaration of Hannah A. Bogen ("Bogen Decl.") ¶ 2.)

2

among Jehovah's Witnesses and throughout the church, and many in the community turned a blind eye to what they knew Mr. Brand's father did. [4]

When Mr. Brand was seven years old, he started bleeding from his butt in school.[5] Every day, he feared going to the bathroom because it hurt him so badly. He would often hold his feces in for as long as he could for fear of the pain when he eventually had to use the bathroom. He lived in hell.

Eventually, his teachers noticed because he was visibly in pain, bleeding, and had trouble sitting. After his teachers got involved, Mr. Brand's father stopped raping him. He continued to rape Mr. Brand's sisters until they moved out of the home at about 15 years old. That was when Mr. Brand's mother first discovered the rape. Mr. Brand did not tell his mother that, in addition to his sisters, *he* was also his father's victim, until 10 years after his father died.

Mr. Brand's teachers were also Jehovah's Witnesses. He suspects that they intentionally did not report the sexual abuse to the police in order to protect his father.

Mr. Brand and his sisters also suffered abuse at the hands of their mother, who drank heavily and daily. In his own words, the message she sent them was "[S]hut up. No one cares." She beat them with belts, paddles, and sticks about every other day and often accused them of lying.

To this day, Mr. Brand has frequent nightmares about his childhood. He cannot sleep without medication.

---

[4] *See* Bogen Decl. Exs. J-O, news articles detailing sexual child abuse within Jehovah's Witness community ("Critics say church elders have treated child sexual abuse as a sin rather than a crime, carefully documenting cases in internal files but not reporting allegations to authorities and sometimes letting the accused remain active in their congregations with access to children from unsuspecting families. Critics also say the church has often required a second witness for complaints, a standard that can be impossible to meet in cases of molestation.").

[5] If the physical pain was not enough, other students also bullied Mr. Brand when they found out what his father did to him.

**2.      Mr. Brand Left Home as Soon as He Could, but His Problems Followed.**

Mr. Brand moved away from home at 18, desperate to create a new life. He hustled, lived out of his truck, and eventually found a roommate in New York City. He worked for many years in a copy room and then started working for an auto group. At 26, he was promoted to VP.

**3.      Mr. Brand Abused Alcohol and Cocaine Continuously Throughout His Adult Life.**

Mr. Brand started drinking a fifth of alcohol daily and using marijuana, cocaine, and Zoloft as frequently as possible at age 16. He describes himself as immediately hooked because "he didn't have to think about anything." It also allowed him to work longer hours, focusing on nothing else, like the history he wanted to leave behind.

**4.      Although He Was in Active Addiction, Mr. Brand Engaged in Therapy to Try and Mend His Relationships.**

When he was living on his own in New York City, at age 29, Mr. Brand started therapy and counseling. This allowed him to reconnect with his parents and forgive them for the past. He remembers one last dinner with the entire family - his sisters and his parents, where there was a mutual understanding that his father was sorry for what he did to his children. Mr. Brand still cries when he speaks of it, clearly an acknowledgment he craved for many decades. Shortly after his father apologized to his children, he passed away.

Therapy also helped Mr. Brand form a deeper bond with his mother, who is still alive. They are close now, and he speaks to her as often as he can. One of his biggest fears is that she will die while he is incarcerated and he will not get to say goodbye.

**5.      Mr. Brand Still Struggles to Be Intimate With Anyone.**

Despite his professional success and the beginning of self-discovery in therapy, Mr. Brand struggled to establish true intimacy with women. In his own words, "women

4

always left me because I could not give them attention physically. I threw myself into work and would use it as an excuse to avoid getting physical."

### 6. Meeting His Wife and Becoming a Stepfather Changed Mr. Brand's Life.

Mr. Brand met his now wife in Mexico in 2009. At the time, she had two daughters - six and eight years old. They reminded Mr. Brand of his sisters and as he describes it, allowed him to have a rebirth and relive his own childhood in a healthy and healing way. At first, he was terrified to get close to his wife and her family because he was concerned he would sexually abuse them. He learned in therapy and through his own research that victims of sexual abuse often abuse others and he did not want that for them.

He took things slow, grew closer to the entire family, and learned to love them like a father and husband should. He gave them the love he never received from either of his parents and it profoundly changed him.

Mr. Brand eventually had a son with his wife. His stepdaughters are working adults - a doctor and a nutritionist. He is very proud of all of his children.

To this day, Mr. Brand has never told his wife about the sexual abuse he suffered. He says it is because he "never wanted to trouble anyone."

### 7. Mr. Brand Succumbed to a Life of Addiction and Crime.

Mr. Brand, his wife, and their children eventually moved to Mexico and created a life there.

In Mexico, Mr. Brand continued to struggle with addiction. Still working, he started helping friends translate paperwork. For one of the first times in his life, people cared about what he had to say and saw value in him. He grew addicted to that feeling.

Eventually, people started asking him to give feedback on legal paperwork, and he knew that if he crossed a certain line, he would be breaking the law. Paperwork quickly turned into other favors, odd jobs, and forms of payment, many involving drugs. Still an addict and finally feeling needed for something, a feeling he grew up

5

without and craved, Mr. Brand agreed. His addiction intensified and ultimately, he was convicted of conspiracy to distribute cocaine.

It was in this same period of drug use that Mr. Brand committed the crimes in this case. There is no question that his severe drug addiction and unfinished work to be done in future therapy played a major role in his choices. He craved feeling needed and praised, and he continued to break the law to ensure he could hold on to that feeling. Although he harmed others when he was broken, he knows now that there is no excuse or justification for what he did.

**8.    In Custody, Mr. Brand Works Full Time on Himself and Helping Others.**

Mr. Brand pled guilty to conspiracy to distribute cocaine in or around 2021 and is currently serving a 120-month sentence in a separate federal case. (ECF 38 at ¶ 36.) While in custody, he works full time in the kitchen, speaks to his family daily, and is doing his best to be the best version of himself. He looks forward to continuing to obtain substance abuse and mental health treatment while in custody.

**9.    Mr. Brand Does Not Want to Die In Custody Without Ever Seeing His Family Again.**

Mr. Brand's family means the world to him. His goal is to maintain the bonds he has with his mother, his wife, and his children and be able to say goodbye to his mother in person before she passes away. A 65-month sentence will also allow Mr. Brand to start paying restitution to the victims in this case sooner rather than later, which Mr. Brand is eager to do as soon as possible.

Mr. Brand recognizes how his addiction caused him to enter a cycle of wrongdoing and incarceration, and he wants to stop that now.  A 65-month sentence will allow him to pay back his victims and show them, the Court, and his loved ones, that he is truly a changed man.

6

**B.** **A Sentence of Time Served Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Just Punishment, Deterrence, and Protects the Public.**

Mr. Brand  takes full responsibility for his conduct in this case. He is prepared to face his sentence.

Mr. Brand's approximate decade in custody deters him from any future misconduct, and protects the public.  This sentence, coupled with mandatory restitution that Mr. Brand will repay for the rest of his life, also reflects the seriousness of the crime and promotes respect for the law.

**C.** **The Court Should Set Restitution at $152,476.**

Mr. Brand reserves his right to argue at sentencing that the government cannot meet its burden to prove a higher restitution amount, and that his restitution total should not exceed $152,476.00, as agreed to in the parties' plea agreement. (ECF 34 at pp. 8-9, ¶ 17.) However, counsel for Mr. Brand continues to confer with the government regarding a final estimate and anticipates reaching agreement on any new figure before Mr. Brand's sentencing.

## II.CONCLUSION

Mr. Brand respectfully requests that the Court impose a sentence of 65 months, recommend him for RDAP, and recommend that he serve his sentence at FCI Lompoc I, so he can be close to his son.

AMY KARLIN
Interim Federal Public Defender

DATED:  July 6, 2026          By  */s/ Hannah A. Bogen*

HANNAH A. BOGEN
Deputy Federal Public Defender
Attorney for DAVYD GEORGE BRAND

7

## CERTIFICATION OF COUNSEL

1.      I, the undersigned, counsel of record for Davyd George Brand, certify that this brief contains 2162 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 6, 2026, at Los Angeles, California.


*/s/ Hannah A. Bogen*
HANNAH A. BOGEN
Deputy Federal Public Defender
Attorney for DAVYD GEORGE BRAND